James **CHEYDLEUR**, Plaintiff,

v.

Carla **HILLS**, Secretary of U. S. Department of Housing and Urban Development, Defendant.

Civ. A. No. 5–71344.

United States District Court,
E. D. Michigan, S. D.

Feb. 5, 1976.

Louis Rabaut, Detroit, Mich., for plaintiff.

Ralph B. Guy, Jr., U. S. Atty., Thomas M. Woods, Asst. U. S. Atty., Detroit, Mich., for defendant.

## MEMORANDUM OPINION

RALPH M. FREEMAN, District Judge.

This is an action to compel specific performance of an alleged contract for the sale of a home which is located in the City of Detroit and owned by the defendant, United States Department of Housing and Urban Development (HUD). The case is now before the court on cross motions for summary judgment. The parties have stipulated to a number of facts and the court is satisfied that the only issues presented by the record are questions of law.

On May 18, 1975 the defendant published a list of its Detroit properties which were then for sale in the classified advertising section of The Detroit News (Complaint, Exhibit A). Among the properties listed was the one here in dispute—a home located at 449 Chalmers Street. Having an interest in purchasing this home, the plaintiff contacted a real estate broker who assisted him in preparing a bid on the property which, on May 23, 1975, was submitted in accordance with the instructions of the defendant's newspaper advertisement. The form upon which this bid was submitted had previously been provided to the broker by the defendant HUD. It bears the caption, "Offer to Purchase and Broker's Tender" (Complaint, Exhibit B).

On May 28, 1975, the plaintiff was present at the defendant's offices during the opening of the bids on the property and was then informed by a HUD employee that "he was the successful bidder and that all that remained to be done was the preparation and processing of the paper work by [HUD]." Stipulation of Facts ¶ 4. At the time he tendered his bid on May 23rd, the plaintiff had also completed, signed and submitted another HUD form entitled "Standard Retail Sales Contract" (Complaint, Exhibit C). Presumably it was HUD's execution of this contract and the preparation of a deed which constituted the "paper work" then remaining to be done. There was no further communication between the parties until June 13, 1975 when the defendant wrote to the plaintiff informing him that his bid had "not been accepted by HUD" (Defendant's Motion Exhibit A). Although the defendant's letter of June 13th offered no explanation for the rejection of plaintiff's bid, it now appears that the defendant mistakenly listed the property as being for sale when in fact there existed a prior agreement to sell it to the State of Michigan.

The plaintiff makes two arguments in support of his motion for summary judgment. First, he argues that the defendant's newspaper advertisement of May 18, 1975 constituted an offer to sell which he accepted by tendering the highest bid. Alternatively, plaintiff contends that his bid was an offer to purchase which the defendant accepted when it orally informed him that he was the successful bidder. Plaintiff argues that under either theory an agreement to sell the property resulted which may now be specifically enforced by this court's order compelling the defendant to convey the property upon the plaintiff's payment of the bid price.

The first issue to be resolved is whether the defendant's newspaper advertisement

constituted an offer to sell as a matter of law, or merely an invitation to submit offers.

■ The Restatement of Contracts (2nd) § 24 defines an offer as a "manifestation of willingness to enter into a bargain, *so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it*" (emphasis supplied). With this definition in mind, it is clear that the defendant's newspaper advertisement of May 18, 1975 did not constitute an offer because, simply stated, it did not contain a promise to sell and therefore did not create a power of acceptance in the plaintiff or anyone else. It is important to note that the advertisement specifically states that "HUD reserves the right to accept or reject any and all bids . . ." Therefore, this court holds that the May 18th newspaper advertisement was not an offer to sell and thus no bargain was concluded by the mere receipt of plaintiff's bid.

■ However, it cannot be doubted that the plaintiff's bid of May 23, 1975 was indeed an offer to buy the property. This bid specifically described the property and promised to pay a sum certain ($1,077) upon acceptance of the bid. The record also shows that the plaintiff tendered a $200 earnest money deposit with his bid. Clearly, a power of acceptance was created in the defendant upon its receipt of this bid. Thus, the only remaining question is whether or not plaintiff's bid was ever actually accepted by the defendant thereby resulting in an enforceable agreement for the sale of the property.

■ The defendant admits that at the time the bids were opened a HUD employee did in fact orally advise plaintiff that he was the "successful bidder" on the home in question. However, it is the defendant's position that this oral statement did not, as a matter of law, constitute an acceptance of plaintiff's bid. Defendant HUD stresses the legal significance of a statement in the "Standard Retail Sales Contract" which the plaintiff executed and submitted with his bid which reads, "The effective date of this contract (the date signed by the purchaser) is 5–23–75 provided this contract is thereafter signed by the seller and delivered to the purchaser." It is the defendant's position that this statement makes HUD's execution and delivery of this document a condition precedent to the conclusion of the contract.

In *Elkhorn-Hazard Coal Co. v. Kentucky River Coal Corporation*, 20 F.2d 67 (1927), the Sixth Circuit stated:

Whether a contract results from an exchange of definite communications, when a formal contract is intended later to be prepared and executed, is a question which has received much consideration. Whether one so results is mainly a question of intention. The law is well stated in *Mississippi & Dominion Steamship Co. v. Swift*, [citations omitted] as follows:

"If the party sought to be charged intended to close a contract prior to the formal signing of a written draft, or if he signified such an intention to the other party, he will be bound by the contract actually made, though the signing of the written draft be omitted. If, on the other hand, such party neither had nor signified such an intention to close the contract until it was fully expressed in a written instrument and attested by signatures, then he will not be bound until the signatures are affixed. The expression of the idea may be attempted in other words: If the written draft is viewed by the parties merely as a convenient memorial, or record of their previous contract, its absence does not affect the binding force of the contract; if, however, it is viewed as the consummation of the negotiation, there is no contract until the written draft is finally signed."

*Id.* at p. 70; *accord, Michigan Broadcasting Co. v. Shawd*, 352 Mich. 453, 90 N.W.2d 451 (1958).

The *Elkhorn* opinion continues after the above-quoted passage with a discussion of circumstances which, in a particular case, may tend to establish that the execution of a signed writing was intended as a condition precedent to the formation of a con-

tract. But in the case at bar there is no need to resort to circumstantial evidence of such intent. It is plainly found in the express language of the "Standard Retail Sales Contract": "The effective date of this contract (the date signed by the purchaser) is 5–23–75 *provided this contract is thereafter signed by the seller and delivered to the purchaser."* (emphasis supplied)

In view of this express condition of the contract, the plaintiff's argument that defendant's oral announcement constituted an acceptance of his bid must fail. The plaintiff has not argued or shown that the HUD employee who made that announcement had any authority to waive this express condition. Nor does the plaintiff contend that he took any action in reliance on the oral announcement which might have given rise to an estoppel.

In summary, it is this court's decision that the contract itself expressly makes the defendant's execution and delivery of the "Standard Retail Sales Contract" a condition precedent to its effectiveness. Because this was not done, the transaction in this case never ripened into an enforceable agreement. The defendant HUD's motion for summary judgment will, therefore, be granted.

An appropriate order shall be submitted.